UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BROKERARTE CAPITAL PARTNERS, LLC,

      Plaintiff,

vs.

THE DETROIT INSTITUTE OF ARTS,

      Defendant.

                                                /

Case No. 2:23-cv-10066
Hon. George Caram Steeh

Aaron M. Phelps (P64790)
Neil E. Youngdahl (P82452)
Varnum LLP
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501-0352
616.336.6000
amphelps@varnumlaw.com
neyoungdahl@varnumlaw.com

*Attorneys for Plaintiff Brokerarte Capital Partners, LLC*

J. Michael Huget (P39150)
Andrew M. Pauwels (P79167)
Jonathan N. Ajlouny (P82030)
Honigman LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
313.465.7000
mhuget@honigman.com
apauwels@honigman.com
jajlouny@honigman.com

*Attorneys for Defendant The Detroit Institute of Arts*

                                                /

**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND POSSESSION PENDING
FINAL JUDGMENT**

## STATEMENT OF QUESTION PRESENTED

**Question:** *May this court grant the relief requested by Plaintiff in violation of the federal Immunity from Seizure Act (22 U.S.C. § 2459)?*

**The DIA answers:** *No.*

## CONTROLLING LAW

22 U.S.C. § 2459

I.   INTRODUCTION

Plaintiff Brokerarte Capital Partners, LLC ("Plaintiff") asks this Court to violate the Federal Immunity from Seizure Act (22 U.S.C. § 2459) and interfere with the Detroit Institute of Arts' ("DIA") custody and control of Vincent Van Gogh's *The Novel Reader* (the "Painting") by (1) enjoining the DIA from "damaging, destroying, concealing, disposing, moving, or using [the Painting] as to substantially impair its value", and (2) compelling the DIA to transfer custody and control of the Painting to Plaintiff. Plaintiff does not allege any misconduct or wrongdoing by the DIA.

The Immunity from Seizure Act prohibits this Court from issuing any injunction (temporary, preliminary or final) or entering any order that would in any way compel the DIA to take, or prohibit the DIA from taking, any action with respect to the Painting. The Court should deny Plaintiff's Motion and should dismiss the Complaint.

II.   STATUTORY AND FACTUAL BACKGROUND

A.   **The DIA's *Van Gogh in America* Exhibition.**

The DIA currently is showing *Van Gogh in America*, an exhibition celebrating the DIA's status as the first United States public museum to purchase a Van Gogh painting, his *Self-Portrait* (1887). (*See* Exhibit A, Declaration of Jill Shaw at ¶ 4; *see also* Van Gogh in America, https://dia.org/events/exhibitions/van-gogh-america.) The exhibition opened to the public on October 2, 2022 to significant

1

media coverage and acclaim and is scheduled to close on January 22, 2023.[1]

The exhibition marks the 100th anniversary of the DIA's acquisition of *Self-Portrait* and includes seventy-three other Van Gogh works that the DIA assembled from around the world. (*See* Ex. A, Shaw Decl. at ¶ 5; *see also* Van Gogh in America, https://dia.org/events/exhibitions/van-gogh-america.)  *Van Gogh in America* is "the first show to tell the story of how US art lovers discovered Vincent's work in the early 20th century."[2]

---

[1] *See, e.g.*, Duante Beddingfield, *Art lovers flock to Detroit from around world for historic DIA van Gogh exhibition*, Detroit Free Press (Nov. 23, 2022), https://www.freep.com/story/entertainment/arts/2022/11/23/van-gogh-detroit-institute-arts-exhibit-2022-attendance/69671923007/; Chadd Scott, *Historic Van Gogh Exhibition Opens In A Revitalized Detroit*, Forbes (Oct. 3, 2022, 3:39 PM), https://www.forbes.com/sites/chaddscott/2022/10/03/historic-van-gogh-exhibition-opens-in-a-revitalized-detroit/?sh=5a566b2bcc38; David Welch, *One of the Largest Van Gogh Exhibitions Ever Is Headed to Detroit*, Bloomberg (Sept. 29, 2022, 10:00 AM), https://www.bloomberg.com/news/articles/2022-09-29/van-gogh-in-america-exhibition-at-detroit-institute-of-arts-dia-preview; Edward Pevos, *Her last name is Van Gogh: Her thoughts on Michigan's Van Gogh one-of-a-kind exhibit*, MLive (Oct. 3, 2022, 8:17 AM), https://www.mlive.com/life/2022/10/her-last-name-is-van-gogh-her-thoughts-on-michigans-van-gogh-one-of-a-kind-exhibit.html; Joseph Treaster, *In Detroit, a Look at America's Passion for van Gogh*, NY Times (Oct. 20, 2022), https://www.nytimes.com/2022/10/20/arts/design/detroit-van-gogh-exhibit.html; Judith Dobrzynski, *'Van Gogh in America' Review: Tracking an Acquired Taste*, Wall Street Journal (Oct. 12, 2022, 5:40 PM), https://www.wsj.com/articles/van-gogh-in-america-review-tracking-an-acquired-taste-11665610849.

[2] Martin Bailey, *Van Gogh in America: Detroit's exhibition set to be a revelation*, Adventures with Van Gogh Blog, The Art Newspaper (Sept. 29, 2022), https://www.theartnewspaper.com/2022/09/30/van-gogh-in-america-detroits-exhibition-set-to-be-a-revelation.

The exhibition was conceived in 2016 and required approximately six years to prepare. (Ex. A, Shaw Decl. at ¶ 6.) In total the exhibition includes a combined eighty works of art from more than fifty lenders and the DIA's own collection. (*Id*.) "Borrowing Van Goghs is now a real challenge, but with 59 paintings, the Detroit exhibition will have the largest number of works in an American show for more than 20 years."[3] These loans include the Painting, which is on loan to the DIA from a foreign lender. (*Id.* ¶ 7.)

## B.     The Federal Immunity from Seizure Act.

"To assist and encourage cultural exchange" with other countries and residents thereof, in 1965 the United States Congress enacted the Immunity from Seizure Act. (Exhibit B, H.R. Rep. No. 1070, 89th Cong., 1st Sess. 2 (1965).) The act has one purpose: to "render **immune from seizure** under judicial process certain objects of cultural significance imported into the United States for temporary display or exhibition, and for other purposes." (Exhibit C, Public Law 89-259[4].) In "**rendering immune from seizure under judicial process**" certain loans of artwork and other objects, the act serves the important national interest of "contribut[ing] to

---

[3] Martin Bailey, *Van Gogh in America*, *supra*. Though Martin Bailey reported 59 paintings by Van Gogh, the exhibition includes 58 paintings and 16 works on paper by Van Gogh as well as 6 paintings by artists other than Van Gogh.

[4] Emphasis added, citations and quotations removed throughout unless otherwise noted.

3

the educational and cultural development of the people of the United States." (Ex. B.)

The Immunity from Seizure Act provides in relevant part:

> Whenever any work of art or other object of cultural significance is imported into the United States from any foreign country, pursuant to an agreement entered into between the foreign owner or custodian thereof and the United States or one or more cultural, educational, or religious institutions with the capacity to appropriately curate such object within the United States providing for temporary storage, conservation, scientific research, exhibition, or display within the United States at any cultural exhibition, assembly, activity, or festival administered, operated, or sponsored, without profit, by any such cultural, educational, or religious institution with the capacity to appropriately curate such object, *no court of the United States*, any State, the District of Columbia, or any territory or possession of the United States *may issue or enforce any judicial process, or enter any judgment, decree, or order, for the purpose or having the effect of depriving such institution, or any carrier engaged in transporting such work or object within the United States, of custody or control of such object* if before the importation of such object the President or his designee has determined that such object is of cultural significance and that temporary storage, conservation, scientific research, exhibition, or display within the United States is in the national interest, and a notice to that effect has been published in the Federal Register.

22 U.S.C. § 2459(a).

In encouraging the adoption of the act, one sponsor cited a contemplated loan to a Virginia gallery from a museum located in and owned by the Soviet Union. (*See* Exhibit D, Rodney M. Zerbe, *Immunity from Seizure for Artworks on Loan to United*

4

*States Museums*, 6 Nw. J. Int'l L. & Bus. 1121, 1124 n. 21 (1984-1985).) The Soviet government had seized the art at issue from Soviet expatriates, and it insisted on immunity from seizure as a condition of loaning the art to the U.S. gallery. (*Id.*) In other words, the passing of the act specifically facilitated a contemplated exchange with the Soviet Union despite putting the loaned art beyond the reach of apparently valid *claims to the artwork by United States citizens*. (*Id.*)

The United States Department of State (the "State Department") administers grants of immunity under the Immunity from Seizure Act. (*See* Immunity from Judicial Seizure Program, U.S. Dep't of State, https://www.state.gov/bureaus-offices/secretary-of-state/office-of-the-legal-adviser/office-of-public-diplomacy-and-public-affairs/ (last visited January 12, 2023).) Museums seeking immunity from seizure apply for immunity through a process enumerated by the Secretary of State. (*See* Application Procedure and Checklist (Revised April 2021), U.S. Dep't of State, https://www.state.gov/application-procedure-and-checklist-revised/ (last visited January 12, 2023).) When immunity is granted, the State Department publishes its determination to the Federal Register. (*Id.*) This publication is determinative. *See* 22 U.S.C. § 2459(a) (providing immunity if a determination of the object's "cultural significance" and its exhibition's being in the "national interest" has been made and published in the Federal Register).

5

C. **<u>Federal Immunity from Seizure Granted for the Painting.</u>**

In securing loans from foreign lenders for *Van Gogh in America*, on May 12, 2022, the DIA applied to the State Department for immunity under the Immunity from Seizure Act for twenty-seven works of art. (<u>Exhibit E</u>, Cover Letter to Application for Immunity.) The supporting documentation accompanying the application included a Schedule of Works Lent from Abroad with respect to which the DIA applied for immunity under the act. (<u>Exhibit F</u>, Schedule of Works Lent from Abroad.) The Painting is one of the works of art covered by the application. (*Id.*) The State Department granted immunity with respect to the DIA's entire submission, including the Painting, on July 14, 2022, as confirmed by publication in the Federal Register:

> **DEPARTMENT OF STATE**
>
> [Public Notice: 11783]
>
> **Notice of Determinations; Culturally Significant Objects Being Imported for Exhibition—Determinations: "Van Gogh in America" Exhibition**
>
> **SUMMARY:** Notice is hereby given of the following determinations: I hereby determine that certain objects being imported from abroad pursuant to agreements with their foreign owners or custodians for temporary display in the exhibition "Van Gogh in America" at the Detroit Institute of Arts, Detroit, Michigan, and at possible additional exhibitions or venues yet to be determined, are of cultural significance, and, further, that their temporary exhibition or display within the United States as aforementioned is in the national interest. I have ordered that Public Notice of these determinations be published in the **Federal Register**.

(<u>Exhibit G</u>, Federal Register Vol. 87, No. 134, Public Notice No. 11783, also

6

available at https://www.govinfo.gov/content/pkg/FR-2022-07-14/pdf/2022-15078.pdf).) Though the Federal Register does not include the list of objects covered, "Upon request by a member of the public, the Office will provide a list of the objects covered under a Federal Register notice. The list generally provided is the schedule the Office received from the applicant."[5] (Application Procedure and Checklist (Revised April 2021), U.S. Dep't of State, https://www.state.gov/application-procedure-and-checklist-revised/ (last visited January 12, 2023).)

### D. Plaintiff's Suit for Possession of the Painting.

On January 10, 2023, Plaintiff filed this lawsuit. By its lawsuit, Plaintiff, alleged to be a Brazilian party, asks this Court to order the DIA to deliver the Painting to Plaintiff. Plaintiff does not allege any misconduct or wrongdoing by the DIA. Incidentally, the DIA notes that prior to submitting its application for immunity to the State Department, the DIA received confirmation from the Art Loss Register that the Painting was not registered as stolen or missing. (Ex. A, Shaw Decl. at ¶ 9.) The DIA also has confirmed that the Painting is not listed on the FBI's National Stolen Art File. (*See* Search "van gogh," National Stolen Art File, https://www.fbi.gov/investigate/violent-crime/art-theft/national-stolen-art-

---

[5] Plaintiff does not allege that it made any effort to request from the State Department the list of objects covered under the determination in the Federal Register for *Van Gogh in America* that was published six months ago on July 14, 2022.

file?q=van+gogh&Subject= (last visited January 12, 2023).)

Plaintiff makes several allegations regarding its rights to the Painting, but those allegations—true or not—are irrelevant to the disposition of this lawsuit, as the Immunity from Seizure Act is dispositive.[6]

In contravention of the Immunity from Seizure Act, Plaintiff sought and, on January 11, 2023, was granted, an Order Pending Hearing ordering the DIA "to refrain from damaging, destroying, concealing, disposing, moving, or using as to substantially impair its value" the Painting. (ECF No. 5, PageID.34.)

### III. ARGUMENT

The Immunity from Seizure Act prohibits this Court from acting as Plaintiff requests and requires the dismissal of this suit. The act expressly prohibits any court in the United States from "issu[ing] or enforce[ing] any judicial process, or enter[ing] any judgment, decree, or order, for the purpose or having the effect of depriving such institution, or any carrier engaged in transporting such work or object within the United States, of custody or control of such object." 22 U.S.C. § 2459(a). The Court should deny Plaintiff's Motion, dissolve the Order Pending Hearing, and

---

[6] Immediately upon becoming aware of the lawsuit and prior to any attempted service by Plaintiff, the undersigned counsel for the DIA contacted Plaintiff's counsel to ensure they were aware of the implications of the Immunity from Seizure Act. Plaintiff's counsel indicated that it was not aware of the act. After being made aware of the Act by DIA counsel, Plaintiff neither dismissed the lawsuit nor advised the Court of the Immunity from Seizure Act's existence.

8

dismiss the Complaint based solely on the grant of immunity by the State Department under the Immunity from Seizure Act.

Plaintiff acknowledges that the relief requested in the Motion, including possession pending final judgment, is subject to the same standards as a motion for preliminary injunction. (ECF No. 2, PageID.16.) A preliminary injunction is an "extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Apex Tool Grp., LLC v. Wessels*, 119 F. Supp. 3d 599, 606 (E.D. Mich. 2015) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). The party seeking injunctive relief must demonstrate four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Id.*

Plaintiff cannot establish each of these factors. The Motion should be denied and the Order Pending Hearing dissolved, permitting the DIA to maintain or transfer the Painting unfettered by any order of this or any other court of the United States.

**A.    Plaintiff has no likelihood of success on the merits.**

Plaintiff cannot succeed on the merits of its claim because federal law absolutely bars the action. A preliminary injunction cannot be issued "where there

is simply no likelihood of success on the merits." *Southern Glazer's Dists. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 854 (6th Cir. 2017). Injunctive relief that is inconsistent with well-established federal law is especially disfavored. *See U.S. v. Contents of Accounts*, 629 F.3d 601, 607-09 (6th Cir. 2011).

The Immunity from Seizure Act, which has been the law of this country for nearly sixty years, provides that "***no court of the United States . . . may issue or enforce any judicial process, or enter any judgment, decree, or order, for the purpose or having the effect of depriving [an] institution, or any carrier engaged in transporting such work or object within the United States, of custody or control of such object***" as long as the importing museum secures a determination, published in the Federal Register, that such object is of cultural significance and that the museum's "temporary storage, conservation, scientific research, exhibition, or display within the United States is in the national interest." 22 U.S.C. § 2459(a).

Here, the Immunity from Seizure Act clearly provides immunity from seizure to the Painting:

- The DIA applied to the State Department for immunity under the Immunity from Seizure Act on May 12, 2022. (Ex. A, Shaw Decl. at ¶ 7; Ex. E, Cover Letter.)

- The DIA's application for immunity included the Painting. (Ex. A, Shaw Decl. at ¶ 8; Ex. F, Schedule of Works.)

- The State Department published in the Federal Register on July 14, 2022 its determination that the Painting and the other covered works of art were of cultural significance and their display was in the national

10

>interest, affording immunity under the Immunity from Seizure Act. (Ex. G, Federal Register Entry.)

By publishing in the Federal Register, the State Department ensured immunity for the DIA with respect to the Painting (and the other borrowed works) from any order by any court in the United States that would impact the DIA's custody or control over the Painting. *See* 22 U.S.C. § 2459(a).

Plaintiff cannot prevail on the merits.

**B.     An injunction would not cause irreparable harm to Plaintiff.**

Any legitimate claims of Plaintiff regarding the Painting can be adjudicated in a dispute between interested parties in a court with jurisdiction over such matters and where venue is appropriate. That is not this Court, and these are not those parties.

Where there is no likelihood of success on the merits, an injunction cannot issue, whether there is irreparable harm or not. *See Southern Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 854 (6th Cir. 2017) (reversing injunction, despite finding of irreparable harm, because plaintiff had no likelihood of success); *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010) ("[A] preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed[.]").

### C. An injunction would cause substantial harm to the DIA, to other U.S. Art Museums, and to International Cultural Exchanges.

The DIA and other U.S. cultural institutions would suffer substantial harm if the Court were to violate the Immunity from Seizure Act and order the DIA to surrender possession of the Painting to Plaintiff, or even if the Court were to maintain the Order Pending Hearing. This harm would impact not only the museums but all society.

Like its peer U.S. art museums, the DIA relies on loans from collectors, galleries, and museums around the world to provide the visiting public with meaningful cultural and educational experiences. (Ex. A, Shaw Decl. at ¶ 10.) These exchanges benefit society immeasurably. The maintenance of this lawsuit would threaten the ability of U.S. art museums to assemble world-renowned exhibitions, such as *Van Gogh in America*, likely chilling the willingness of foreign lenders to lend works of art to U.S. institutions. Congress enacted the Immunity from Seizure Act precisely to avoid this substantial risk to the DIA and other U.S. art museums.

### D. The public interest would not be served by issuing an injunction.

Congress enacted the Immunity from Seizure Act for the very purpose of promoting the public interest. In considering the act, the Justice Department noted to Congress "the commendable objective of this legislation is to encourage the exhibition in the United States of objects of cultural significance which, **in the**

**absence of assurances such as are contained in the legislation**, would not be made available." (Exhibit H, S. Rep. No. 747, 89th Cong., 1st Sess. 3 (1965)[7].) In "**rendering immune from seizure under judicial process**" certain loans of artwork and other objects **the act serves the important national interest** of "contribut[ing] to the educational and cultural development of the people of the United States." (Ex. B, H.R. Rep. No. 1070, 89th Cong., 1st Sess. 2 (1965).) Indeed, the State Department declared regarding this very exhibition: the "objects being imported from abroad" for display in *Van Gogh in America* "are of cultural significance" and "their temporary exhibition or display within the United States . . . **is in the national interest**." (Ex. G.) The existence and enforcement of the Immunity from Seizure Act protects the public interest and requires the dissolution of the Order Pending Hearing and denial of Plaintiff's Motion.

### IV. CONCLUSION

The Painting is immune from seizure under the Immunity from Seizure Act; therefore, federal law requires the denial of Plaintiff's Motion and dismissal of this suit.

Plaintiff's failure to identify and consider applicable law has caused substantial undue burden and risk to the DIA. The DIA is accused of no misconduct.

---

[7] For a further discussion of the legislative history, *see* Ex. D, Zerbe, *Immunity from Seizure for Artworks on Loan to United States Museums*, 6 Nw. J. Int'l L. & Bus. 1121 (1984-1985).

13

To the contrary, the DIA's exhibition has been the subject of widespread acclaim. In assembling the exhibition, the DIA applied for and received publication by the State Department in the Federal Register under the Immunity from Seizure Act. Such publication ends the inquiry.  The Painting is immune from **any order** of this Court sought by Plaintiff in this litigation.

The DIA respectfully requests that the Court:

a) Deny Plaintiff's Motion;

b) Dissolve the Order Pending Hearing; and

c) Dismiss this lawsuit.

                                                    Respectfully submitted,

                                                    HONIGMAN LLP
Attorneys for Defendant The Detroit Institute of Arts

By: /s/ Andrew M. Pauwels
    J. Michael Huget (P39150)
    Andrew M. Pauwels (P79167)
    Jonathan N. Ajlouny (P82030)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
313.465.7290

Dated:  January 16, 2022

14

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2023, I electronically filed the foregoing papers with the Clerk of the Court using the court's electronic filing system, which will send notification of such filing to all counsel of record.

/s/ Andrew M. Pauwels
Andrew M. Pauwels (P79167)
