UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BROKERARTE CAPITAL
PARTNERS, LLC,

               Plaintiff,

    vs.

THE DETROIT INSTITUTE
OF ARTS,

             Defendant.
_____/

Case No. 23-CV-10066

HON. GEORGE CARAM STEEH

OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND POSSESSION
PENDING FINAL JUDGMENT (ECF NO. 2), DISSOLVING
ORDER PENDING HEARING (ECF NO. 5) AND DISMISSING CASE

Plaintiff Brokerarte Capital Partners, LLC ("Brokerarte") initiated this

claim and delivery action, MCLA §600.2920, with a Verified Complaint

alleging that it is the rightful owner of a Van Gogh painting entitled "Liseuse

De Romans" a/k/a "The Novel Reader" a/k/a "The Reading Lady" ("the

Painting"). The Painting is currently on loan by an unknown non-party to the

defendant, the Detroit Institute of Arts ("DIA"), for inclusion in the *Van Gogh

in America* exhibition. The matter is before the Court on plaintiff's motion for

temporary restraining order and possession pending final judgment (ECF

No. 2). Both parties submitted briefs and the Court heard oral argument on January 19, 2023. The defendant relies on a federal statute granting immunity from the relief sought by plaintiff. For the reasons set forth in this opinion and order, the Court concludes that it is precluded from granting the relief sought by plaintiff in the pending motion as well as in the Complaint. Therefore, plaintiff's motion is denied, the Order Pending Hearing previously entered by the Court is dissolved, and the case will be dismissed.

<u>BACKGROUND</u>

Brokerarte is a limited liability company organized under the laws of Florida. Brokerarte's sole member is Gustavo Soter, a citizen of Brazil. Plaintiff buys, sells, and collects artwork, including paintings by world-renowned artists, and advises on art collections. Plaintiff attaches a Bill of Sale to its Verified Complaint showing that it purchased the Painting for $3.7 million on May 3, 2017. Plaintiff never took possession of the Painting, but after the purchase arranged for it to be stored in Brazil by a third party.

Plaintiff describes that for the first couple of years after purchasing the Painting, it had regular communications with the third party who was storing the Painting. After some time, plaintiff lost contact with the third party and was unaware of the location of the Painting. Plaintiff recently

learned that the Painting is in the DIA's possession as part of the *Van Gogh in America* exhibition. The exhibition ends January 22, 2023, after which plaintiff believes that the DIA will return the Painting to the person or entity that lent it to the museum ("the Lender"). The Lender has only been identified by the DIA as a private collection located in Sao Paulo, Brazil. Plaintiff does not allege any misconduct or wrongdoing by the DIA, but requests that the DIA be ordered to hold the Painting pending resolution of the lawsuit, or deliver the Painting to plaintiff as the rightful owner, pending a final judgment.

The DIA conceived of the *Van Gogh in America* exhibition in 2016 as a way of celebrating its status as the first public museum in this country to purchase a Van Gogh painting. (Decl. Dr. Jill Shaw, ¶ 4). Over the next six years, the DIA assembled seventy-three Van Gogh works from around the world, which together with works from its own collection, created an exhibition designed to "tell the story of how US art lovers discovered Vincent's work in the early 20th century." *Id*. at ¶ 6; Martin Bailey, *Van Gogh in America: Detroit's exhibition set to be a revelation*, Adventures with Van Gogh Blog, The Art Newspaper (Sept. 29, 2022).

In connection with loan agreements for twenty-seven of the works of art imported from foreign lenders, the DIA applied to the US State

Department for immunity pursuant to the Immunity from Seizure Act. The Painting was included in the DIA's application. (Decl. Dr. Jill Shaw, ¶¶ 8, 9; Schedule of Works Lent from Abroad, ECF No 12-7, PageID.109). Prior to submitting its immunity application, the DIA confirmed with the Art Loss Register that the Painting had not been reported as lost or stolen. *Id*. at ¶ 10. The Director of the United States Information Agency, acting as the President's designee,[1] considered the DIA's application and determined that "certain objects being imported from abroad pursuant to agreements with their foreign owners or custodians for temporary display in the exhibition "Van Gogh in America" at the Detroit Institute of Arts . . . are of cultural significance, and further that their temporary exhibition or display within the United States . . . is in the national interest." The Notice of Determinations was published in the Federal Register on July 14, 2022. Federal Register Vol. 87, No. 134, Public Notice No. 11783.

<u>LEGAL STANDARD</u>

The Michigan Court Rules allow for the filing of a verified motion for possession pending final judgment, a prompt hearing, and a variety of interim relief to be granted by the Court should the circumstances so

---

[1] The President delegated this authority to the Director of the USIA by Executive Order 12047, 43 Fed.Reg. 13359 (1978), as amended by Executive Order 12388, 47 Fed.Reg. 46245 (1982).

warrant. MCR 3.105(E). Prior to the hearing in this case, on January 11, 2023, the Court ordered that the DIA "refrain from damaging, destroying, concealing, disposing, moving, or using [the Painting] as to substantially impair its value . . . ." MCR 3.105(E)(2)(a) (Order Pending Hearing, ECF No. 5).

A motion for possession pending final judgment "is comparable to a motion for a preliminary injunction pursuant to Fed. R. Civ. P. 65, and federal courts in this district often consider standards of both rules when faced with such a motion." *Sutton Leasing, Inc. v. Veterans Rideshare, Inc.*, 468 F. Supp. 3d 921, 929–30 (E.D. Mich. 2020). The Court should therefore consider: "(1) the likelihood of the plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served by the injunction." *Id*. at 930 (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985)). These four factors constitute a balancing test, "not prerequisites that must be met." *Id*.

<u>ANALYSIS</u>

Plaintiff's lawsuit alleges a single count for claim and delivery, asserting that as the Painting's lawful owner it has a right to possession. MCLA §600.2920. In the pending motion, plaintiff asks the Court to order

the DIA to deliver possession of the Painting to plaintiff or to refrain from moving it or impairing its value during the pendency of the case.

Defendant responds that plaintiff cannot succeed on the merits of its claim because a federal statute prevents the Court from granting the relief requested. In 1965, Congress enacted the Immunity from Seizure Act ("Act"), 22 U.S.C. § 2459, "[t]o assist and encourage cultural exchange" with other countries and their residents. H.R. Rep. No. 1070, 89th Cong., 1st Sess. 2 (1965). To achieve this purpose, the Act "render[s] immune from seizure under judicial process certain objects of cultural significance imported into the United States for temporary display or exhibition . . . ." Public Law 89-259.

Several requirements must be satisfied before the protections of the Act will apply. As relevant here, the cultural object must be imported into the United States from any foreign country; pursuant to an agreement between the foreign owner or custodian and the institution; for temporary exhibition or display; at a cultural exhibition; administered without profit; by such institution with the capacity to curate the object; where, prior to the importation of the object, the President or his designee makes a determination that the object is of cultural significance; and determines that the object's temporary exhibition in the United States is of national interest;

and a notice to that effect has been published in the Federal Register. 22

U.S.C. § 2459(a). If the importing institution satisfies these requirements

and secures a determination from the President or his designee as

described, the Act provides that: "no court of the United States . . . may

issue or enforce any judicial process, or enter any judgment, decree, or

order, for the purpose or having the effect of depriving [an] institution, or

any carrier engaged in transporting such work or object within the United

States, of custody or control of such object[.]"

The Department of State administers the Immunity from Judicial

Seizure Program. https://www.state.gov/bureaus-offices/secretary-of-

state/office-of-the-legal-adviser/office-of-public-diplomacy-and-public-

affairs/ (last visited January 19, 2023). Institutions, like the DIA, seeking

immunity from seizure under judicial process of cultural objects imported for

temporary storage, conservation, scientific research, exhibition or display,

must apply through a process established by the Secretary of State. *See*

Application Procedure and Checklist (Revised April 2021), U.S. Dep't of

State, https://www.state.gov/application-procedure-and-checklist-revised/

(last visited January 19, 2023).

In developing the *Van Gogh in America* exhibition, the DIA entered

agreements to secure loans from various foreign lenders. On May 12,

2022, the DIA submitted its application for the Painting, among other works of art, to be immune from seizure. The Director of the United States Information Agency determined that the Painting and other covered works of art were of cultural significance and their display was in the national interest. The Notice of Determination was published in the Federal Register on July 14, 2022.

Plaintiff maintains that there is an issue of fact whether defendant can assert immunity under the Act. Specifically, plaintiff asserts that it is the owner of the Painting, so the Lender cannot also be an owner. Plaintiff argues that the term "custodian," which is not defined in the statute, necessarily implies some legal entitlement to possess and control the object at issue because the Act is not intended to protect thieves. Plaintiff contends it is defendant's burden to demonstrate that the Lender was a legal custodian over the Painting to assert immunity from seizure.

The purpose of the Act is not to protect the owner of the object inasmuch as it is to encourage the exhibition in the United States of objects of cultural significance from abroad. In "rendering immune from seizure under judicial process" certain artwork and other objects, the Act serves the important national interest of "contribut[ing] to the educational and cultural development of the people of the United States." H.R. Rep. No. 1070, 89th

Cong., 1st Sess. 2 (1965). The method chosen to achieve the Act's purpose is to provide the institution with protection from seizure of such objects determined to be of cultural significance. Requiring an institution to ultimately bear the burden of proof in court that a foreign lender had a legal right to loan an object before it can assert that the object is immune from seizure would be circuitous, would not further the Act's stated purpose and would likely result in a chilling effect on cultural exchanges.

Here, the Lender was in possession of the Painting and the defendant engaged in due diligence to determine that the Painting had not been reported as lost or stolen. Furthermore, the Director of the United States Information Agency determined that each of the requirements of the Act were met. This included a determination that the objects covered by the application were being "imported from abroad pursuant to agreements with their foreign owners or custodians . . . ." Federal Register Vol. 87, No. 134, Public Notice No. 11783. The agency's determination is entitled to deference and the Court will not revisit the findings made by the State Department. *See Magness v. Russian Fed'n*, 84 F. Supp. 2d 1357, 1360 (S.D. Ala. 2000) (court held it would "not attempt to go behind that determination and, thus, put in jeopardy the Exhibition which was originally brought into this country in reliance on such a determination.")

The Court is prohibited under the Act from issuing any order depriving defendant of custody or control of the Painting. Therefore, plaintiff lacks a legal basis for the relief it seeks from the Court. As such plaintiff has no likelihood of success on the merits of its lawsuit alleging claim and delivery or its motion for temporary restraining order and possession pending final judgment. Where there is no likelihood of success on the merits, an injunction cannot issue, regardless of whether there is irreparable harm. *See Southern Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 854 (6th Cir. 2017) (reversing injunction, despite finding of irreparable harm, because plaintiff had no likelihood of success); *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010) ("[A] preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed[.]"). As such, consideration of the remaining factors is unnecessary.

The Painting is immune from seizure pursuant to the Act, which prohibits the Court from issuing an injunction or entering any other order that would deprive the defendant of custody or control of the Painting. Because the Court cannot grant the ultimate relief sought by plaintiff, the lawsuit will be dismissed.

- 10 -

<u>CONCLUSION</u>

For the reasons stated in this opinion and order,

IT IS HEREBY ORDERED that plaintiff's motion for temporary restraining order and possession pending final judgment (ECF No. 2) is DENIED.

IT IS HEREBY FURTHER ORDERED that the Court's Order Pending Hearing (ECF No. 5) is DISSOLVED.

IT IS HEREBY FURTHER ORDERED that the plaintiff's lawsuit is DISMISSED.

Dated:   January 20, 2023

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 20, 2023, by electronic and/or ordinary mail.

s/Michael Lang
Deputy Clerk

---